IN THE

TENTH COURT OF APPEALS

 




 
 
 
 
 
 
 


 

 



No. 10-08-00259-CV

 

In re
Donna Murray

 

 



Original Proceeding

 

 



Opinion



 








Donna Murray seeks a writ of mandamus compelling
Respondent, the Honorable George Allen, assigned judge to the 13th Judicial District Court of Navarro County, to dismiss or abate a lawsuit seeking her
removal as justice of the peace and to vacate an order suspending her without
pay.  We deny the relief requested.

FACTUAL BACKGROUND

 

            Murray is Justice of the
Peace, Precinct 3, in Navarro County.  John Jackson, elected judge of the 13th Judicial District Court of Navarro County, and Connie Mayfield, another justice of the peace in
 Navarro County, filed a complaint with the State Commission on Judicial
Conduct,[1]
alleging that Murray had committed several acts of official misconduct and
incompetence.  After Murray was indicted for possession of methamphetamine, the
Commission entered an order suspending Murray with pay.

The State, acting through and on the relation of Jackson
and Mayfield, subsequently filed a petition in district court requesting Murray’s removal on the same grounds as those alleged in their administrative complaint.  Jackson recused himself and Respondent was assigned to the case.  The district attorney’s
office also moved for recusal in light of Murray’s pending drug charge and
requested that Respondent appoint the Criminal Justice Division of the Attorney
General’s Office as special prosecutor.  Respondent granted the motion.

Respondent further suspended Murray without pay,
after which Murray filed three separate motions.  In a motion to show
authority, she argued that the assistant attorney general assigned to the case
had no authority to act as attorney pro tem.  In a motion to abate, she
contended that, because a complaint had been filed with the Commission first,
the Commission has primary jurisdiction over the case and the lawsuit should be
abated pending a final decision by the Commission.  In a motion to dismiss, Murray sought dismissal on jurisdictional grounds.  Respondent denied these motions.

In her petition for mandamus, Murray argues that: (1) Respondent should have granted either her
motion to dismiss or her motion to abate because the Commission possesses
primary jurisdiction over the removal proceedings (issues one and two); and (2)
Respondent should have granted her motion to show authority because the
Attorney General lacks authority to act (issue three).[2]

MANDAMUS REQUIREMENTS

Generally, mandamus relief is
available only to correct a clear abuse of discretion when there is no adequate
remedy by appeal.  In re Bexar County Criminal Dist.
Attorney’s Office, 224 S.W.3d 182, 185 (Tex. 2007) (orig. proceeding); In re Tex. Dep't of Family &
Protective Servs., 210 S.W.3d 609, 612 (Tex. 2006) (orig. proceeding).  Mandamus
is also available where: (1) the order being challenged in a mandamus
proceeding is void; or (2) jurisdictional conflicts exist between a trial court
and an administrative agency.  In re Sw. Bell Tel. Co., 35 S.W.3d 602, 605 (Tex. 2000)
(per curiam) (void order); In re Keeling, 227 S.W.3d 391, 395 (Tex.
App.—Waco 2007, orig. proceeding) (same); In re Entergy Corp., 142 S.W.3d 316, 321-22, 324 (Tex. 2004) (orig.
proceeding) (jurisdictional conflicts); In re Luby’s Cafeterias, 979
S.W.2d 813, 816-18 (Tex. App.—Houston [14th Dist.] 1998, orig. proceeding) (same).

JURISDICTION 

Murray’s first
and second issues are based on the theory that Respondent was required to
either dismiss or abate the lawsuit because the Commission possesses primary
jurisdiction over the removal proceedings, thereby depriving Respondent of
authority to act and making void his order suspending Murray without pay.

Applicable Law

An agency can have exclusive or primary
jurisdiction.[3]  See
Subaru of Am. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 221 (Tex. 2002).  Exclusive jurisdiction gives
the agency “sole authority to
make an initial determination in a dispute.”  Id.  Exclusive
jurisdiction applies when a pervasive regulatory scheme is the exclusive means
of remedying the problem addressed.  See id.  If an agency possesses exclusive
jurisdiction, the trial court must dismiss the suit.  Id.

Primary
jurisdiction “allocate[s] power between courts and agencies when both
have authority to make initial determinations in a dispute.”  Id.  Primary
jurisdiction applies where: (1) an
agency is typically staffed with experts trained in handling the complex
problems in the agency’s purview; and (2) great benefit is derived from an
agency’s uniformly interpreting its laws, rules, and regulations, whereas
courts and juries may reach different results under similar fact situations.  Id.  If an agency possesses primary jurisdiction, the trial
court should abate the suit and “suspend finally adjudicating the claim until
the agency has an opportunity to act on the matter.”  Id.

Whether an agency has exclusive or primary
jurisdiction is a question of law that we review
de novo.  See id. at 222.

 

Analysis

Under Article V of the Texas Constitution, both the Commission and the district court possess
authority to make initial determinations in disputes involving the removal of a
justice of the peace.  Section 1-a
gives the Commission authority to recommend
removal.  See Tex. Const. art. V, § 1-a(6)(A); see also Tex. Gov’t Code Ann. § 33.002(a)
(Vernon 2004) (Commission was established under section 1-a and has the powers
provided by that section); In re Rose, 144 S.W.3d 661, 672 (Tex. Rev.
Trib. 2004) (section 1-a applies to justices of the peace); Tex. R. Rem’l/Ret. Judg. 1(b)
(West 2008) (“‘Judge’ means…any Justice of the Peace”).  Section
24 gives the district court authority to order removal.  See Tex. Const. art. V, § 24 (“…justices of the peace…may be
removed by the Judges of the District Courts…”).  As these two provisions make
clear, the Commission does not possess exclusive jurisdiction over the removal
of a justice of the peace, but the primary-jurisdiction doctrine potentially
applies.  See Subaru,
84 S.W.3d at 221.  For this reason, dismissal would not be appropriate. 
 Id.  Abatement would be the
proper remedy if primary jurisdiction applies.  Id.

Citing
section 1-a(13), In re Carrillo, 542 S.W.2d 105 (Tex. 1976), and In
re Lowery, 999 S.W.2d 639 (Tex. Rev. Trib. 1998), the State suggests that the
Commission does not have primary jurisdiction because both a removal proceeding
before the Commission and a removal proceeding before the district court may be
pursued simultaneously.  The Commission’s amicus brief supports this position.

Section 1-a(13) provides that removal by the
Commission is “alternative to and
cumulative of” other methods of removal provided in the Constitution.  Tex. Const.
art. V, § 1-a(13).  In Carillo, the Commission initiated removal proceedings against Carillo, a
district judge, pursuant to section 1-a.  See Carrillo,
542 S.W.2d at 106.  The
Commission appointed a master to
hear evidence and file a report.  Id.  A pending impeachment proceeding
in the Texas Senate was postponed to await the master’s report.  Id. at 107.  After the master found Carrillo guilty of eleven of twelve charges, the
Senate voted to remove Carillo from office.  Id. at 106-07.  The
Commission subsequently filed its own findings with the Supreme Court and
recommended removal.  Id. at 106.  Carrillo filed a petition to reject
this recommendation, alleging in part that the case was moot because of the
impeachment proceeding.  Id.  The Supreme Court disagreed because the
Constitution provides several methods for removal of district judges, none of
which is an “exclusive remedy.”  Id. at 108.  “[M]ore than one method
may be pursued concurrently.”  Id.

In Lowery, Justice of the Peace Lowery challenged
the Commission’s recommendation of removal under section 1-a, arguing that section 24 “specifically includes justices of the
peace, it is a more specific provision, taking precedence over the more general
provisions of § 1-a.” 
Lowery, 999 S.W.2d at 649.  The Review Tribunal rejected this contention:

Although the Constitution provides multiple
methods for the removal of a judge, none is an exclusive remedy and more
than one may be pursued concurrently.  In the instant matter, the
proceedings to remove Respondent were conducted under art. V, § 1-a. 
Subsection 13 specifically provides that § 1-a
is an alternative to, and cumulative of, the methods of removal of persons
holding an office named in Paragraph A of Subsection
6.  In turn, Paragraph A of Subsection 6 authorizes the removal of any justice
or judge of the courts established in art. V, § 1. 
This latter provision clearly encompasses justices of the peace.

 

Id. at 649-50 (emphasis added).

Murray attempts
to distinguish Lowery on grounds that “Lowery attempted to avoid the
Commission by arguing it should have been a civil removal action.”  This
distinction does not render Lowery inapplicable.  The Review Tribunal’s
ruling suggests that proceedings would have been proper under either section 24
or section 1-a.  See id.  Its reasoning is relevant to whether
different proceedings may occur simultaneously.

As for Carillo, Murray argues that the
Senate’s postponement of its proceeding to await the master’s report
demonstrates that two proceedings cannot be pursued simultaneously.  See
Carrillo, 542 S.W.2d at 107.  However, the Commission made its recommendation of
removal after the Senate voted to remove Carillo.  Id. at 106-07. 
Proceedings before the Commission were ongoing at the time the Senate proceeded
with the impeachment process.

Murray next
contends that Igal v. Brightstar
Info. Tech. Group, Inc., 250 S.W.3d 78 (Tex. 2008), refutes the theory that proceedings
may be pursued simultaneously.  In Igal, the Supreme Court considered “whether
TWC’s final adjudication denying recovery of wages precludes the subsequent
filing of a common law wage claim for the same wages in state court.”  Igal,
250 S.W.3d at 81.  Igal
had filed a wage claim with the TWC and, after receiving unfavorable rulings,
filed suit in district court.  See id.  The trial court found
that res judicata barred Igal’s suit.  Id.

The Supreme Court held that the Payday Law, which
authorized Igal’s administrative complaint, is not the “sole and exclusive
remedy…but is rather an alternative
remedy that is cumulative of the common law.”  Id. at 88.  It “offers an
alternate means to the same remedy.”  Id.

Employees were then given a choice between an
administrative process designed to adjudicate quickly relatively small claims
or to have their day in court and the longer and more involved process of the
judicial system.  The Legislature could have created two consecutive procedures
(an administrative proceeding followed by a new judicial proceeding for the
dissatisfied party) for adjudicating these claims, but there is no indication
that it did.  In Texas parlance, the claimant selects which horse to ride.  Once
the horse
crosses the finish line, a claimant cannot switch horses and run the same race again,
hoping for a different outcome.

 

Id. at 92 (internal citations omitted).  Igal’s suit
was barred because he could either file an administrative proceeding under the
Payday Law or a common law debt action in state court, but chose the former.  See
id. at 93.

            We note three important distinctions
between Igal and Murray’s situation.  First, in Igal, the TWC had
issued a final decision at the time Igal filed suit; thus, the Supreme Court’s
decision hinged on application of the res judicata doctrine.  Id. at 92-93.  Here, the Commission has not yet issued a final decision and the res
judicata doctrine is not at issue.

Second, Jackson and Mayfield had a duty to file a
complaint with the Commission.  See Tex. Code Jud. Conduct, Canon 3(D)(1), reprinted in Tex. Gov’t Code Ann., tit. 2, subtit G
app. B (Vernon 2005) (requiring judges to take “appropriate action” after
receiving information “clearly establishing” a violation of the Code of
Judicial Conduct).  After filing a
complaint, they have little or no further involvement in the administrative
process.  See Tex. R. Rem’l/Ret. Judg. 1-18 (West 2008) (rules governing the disciplinary
process); see also Tex. Gov’t
Code Ann. §§ 33.021-.038 (Vernon 2004) (Commission’s powers and duties,
including requirement in section 33.033 that the Commission notify the
complainant of the case disposition and complainant’s right to reconsideration
of a dismissed complaint as provided by section 33.035).

Third, unlike the Payday Law, section 1-a(13) contains
specific language authorizing concurrent removal proceedings.  See Tex. Const. art. V, § 1-a(13).  Case law confirms this interpretation.  See Carrillo,
542 S.W.2d at 108; see also Lowery, 999 S.W.2d at 649-50.

            Accordingly, we hold that the Texas
Constitution expressly allows for the pursuit of concurrent removal proceedings
against a justice of the peace before the Commission and in district court.  See Tex. Const. art. V, § 1-a(13); see also Carrillo, 542 S.W.2d at
106; Lowery, 999 S.W.2d at 649-50.  The Commission possesses neither exclusive
nor primary jurisdiction.  Respondent did not abuse his discretion by denying Murray’s motion to abate or her motion to dismiss.

AUTHORITY TO ACT

            In issue three, Murray contends that Respondent
abused his discretion by denying her motion to show authority, arguing that
neither constitutional nor statutory provisions authorize the Attorney General
to act on behalf of Jackson and Mayfield.   

                The county or
district attorney ordinarily represents the State in a civil removal action.  See
Tex. Loc. Gov’t Code Ann. §
87.018(d)-(e) (Vernon 2008).[4]  However,
 Navarro County does not have a county attorney and the district attorney was
recused.  Respondent could thus appoint an attorney pro tem.[5] 
See In re Guerra, 235 S.W.3d 392, 410 (Tex. App.—Corpus Christi 2007,
orig. proceeding).

Citing State ex rel. Downs v. Harney, 164
S.W.2d 55 (Tex. Civ. App.—San Antonio 1942, writ ref’d w.o.m.), and Garcia
v. Laughlin, 285 S.W.2d 191 (Tex. 1955), Murray argues that the Attorney
General is not the proper authority to prosecute a civil removal action.  In Downs, the San Antonio Court concluded that, “since
there is no constitutional or statutory provision which vests in the Attorney
General the power, or makes it his duty, to institute actions for the removal
of county officers under the provisions of Art. 5, §24, of the
Constitution, and Art. 5970 of the Statutes [now Chapter 87], supra, the
Attorney General cannot assert or exercise such power and duty in this
action.”  Downs, 164 S.W.2d at 58.  “[S]uch power and duty vests in the county
attorney.”  Id.  In Garcia,
the Supreme Court relied on Downs in reaching its decision that the
“Attorney General does not possess
the power to institute [] removal proceedings.”  Garcia,
285 S.W.2d at 195 (emphasis added).

In both Downs and Garcia, the
Attorney General participated in instituting the removal action.  Here, the
Attorney General did not join in the institution of removal proceedings against
 Murray, but was appointed as attorney pro tem.  He was not acting in
the capacity of Attorney General.  Garcia and Downs are, therefore,
inapplicable to the specific facts of this case.  The appropriate question then
becomes whether the Attorney General could act as attorney pro tem.

The State suggests that article 2.07 of the Code
of Criminal Procedure expressly authorizes this appointment.  Under Article 2.07, a judge may appoint “any
competent attorney,” including an assistant attorney general, to represent the State where the “attorney for the
state is disqualified to act in any case or proceeding, is absent from
the county or district, or is otherwise unable to perform the duties of his
office, or in any instance where there is no attorney for the state.”  Tex. Code. Crim. Proc. Ann. art.
2.07(a), (f) (Vernon 2005) (emphasis added).  The State argues that article
2.07 applies to civil cases because it does not distinguish between civil and
criminal cases.  See Hatch
v. State, 958 S.W.2d 813, 815-16 (Tex.
Crim. App. 1997) (“plain language” of section 62.201 of the Government Code “makes no distinction between civil and criminal cases”
and the “Legislature knew how to restrict statutes to civil cases,” as it had
done in section 62.202); see also Tex.
Code. Crim. Proc. Ann. arts. 1.051, 1.05, 2.01, 3.02, and 31.05 (Vernon 2005 & 2006 & Supp. 2008) (specifically referencing criminal cases); Tex. Gov’t Code Ann. § 402.028 (Vernon 2005) (authorizing the Attorney
General to provide assistance to a county, district, or criminal district
attorney in criminal cases, but not “prohibit[ing] an assistant attorney general from appointment as
attorney pro tem” under article 2.07).

Murray responds
that the Code governs criminal proceedings alone.  See Tex. Code Crim. Proc.
Ann. art. 1.02 (Vernon 2005) (“The procedure herein prescribed shall govern all
criminal proceedings”); see also Tex. Code Crim. Proc. Ann. art. 1.26 (Vernon 2005) (“The provisions of this Code shall be liberally
construed, so as to attain the objects intended by the Legislature: The
prevention, suppression and punishment of crime.”); Baxter v. Tex. Dep’t of Human Res., 678 S.W.2d 265, 267 (Tex. App.—Austin
1984, no writ) (“Code of Criminal
Procedure applies only to criminal actions”).  According to Murray, the
Legislature could have “expressly provided for the Attorney General to be
appointed attorney pro tem in a civil removal action,” but has not done
so.     

We find the reasoning in Guerra
instructive.  In Guerra, the Corpus Christi Court considered a judge’s authority to “appoint an
attorney pro tem to assist a grand jury in investigating a district attorney’s
conduct when the district attorney has not sought recusal.”  Guerra, 235 S.W.3d at
411.  Several other states had already determined that a “court has the inherent
power to appoint an attorney pro tem when the county elected attorney is under
grand jury investigation,” even in the absence of statutory authority.  Id. at 411-414 (emphasis added).  Moreover, an 1862 Texas Supreme Court case had recognized
that, “[i]n case of a vacancy in the office of district attorney, or in case of
the district attorney’s temporary disability to act, or in any particular
case where there might exist special reasons why he should not act, any
other competent person might act in the preparation of indictments, by the
authorization of the court.”  Id. at 414 (emphasis added) (quoting State v. Gonzales, 26 Tex. 197, 199 (1862)). 
Accordingly, the Corpus Christi Court held that “respondent was authorized to
appoint a competent person to act in relator’s place, and…this authorization is
explicitly derived from article 2.07 of the code of criminal procedure.”  Id.  The appointment was also “implicitly authorized by a court’s inherent power.” 
 Id. at 415 (emphasis added).

Assuming, without deciding, that article 2.07 does
not apply to civil proceedings, we conclude that, in the absence of a specific
statutory provision, Respondent’s inherent power authorizes the appointment of
an attorney pro tem to represent the State where the district or county
attorney cannot act.  See id. at 414; see also Trigg v. State, 49 Tex. 645, 675 (1878)
(in a removal proceeding filed pursuant to section 24, “[i]t would seem proper,
also, for the district attorney or county attorney, when not disqualified, to prosecute the
case on behalf of the State, --not doubting, however, the authority of the
judge to request other attorneys to act, where the State,
for any cause, is not otherwise represented, or to act as assistants of the
State’s counsel”).  In such circumstances, the attorney pro tem assumes
all duties of the office, which includes representation of the State in a civil
removal action.  See Guerra, 235 S.W.3d at 409 (“A ‘district
attorney pro tem’ is appointed by the district court, and after taking the
oath of office, assumes the duties of the elected district attorney and, in
effect, replaces the latter in performing germane functions of office for
purposes contemplated by the appointment.”); see also Tex. Loc. Gov’t Code Ann. § 87.018(d).

Respondent’s appointment did not give the Attorney
General the authority to institute removal proceedings, thereby enlarging the
Attorney General’s power, but merely authorized an assistant attorney general
to act as a substitute where the county or district attorney was unable to act. 
See Guerra, 235 S.W.3d at 409.  We, therefore, hold that Respondent acted
within his inherent power when appointing the Attorney General as attorney pro
tem and did not abuse his discretion by denying Murray’s motion to show
authority.

 

 

CONCLUSION

Because Murray has not established her right to
mandamus relief, we deny her petition for writ of mandamus.  Our July 23, 2008 stay order will remain in effect for fourteen
days following
the date of this opinion.

 

 

  

FELIPE REYNA

Justice

 

Before
Justice Vance, 

Justice Reyna, and

Justice Mazzant[6]

Writ
denied 

Opinion
delivered and filed November 5, 2008

[OT06]

            









[1]               The Commission is an agency of the
Judicial Department of state government, created by the Texas Constitution, and
the Legislature is authorized to pass consistent laws to further carry out its
purpose.  See Tex. Const. art. V, § 1-a.





[2]
              In an unpublished order, we
stayed further proceedings in the trial court, including enforcement of the order suspending Murray without pay.  In a separate published order, we requested amicus briefing from
potentially interested parties, including the Office of the Attorney General, the State Commission on Judicial
Conduct, and the Justices of the Peace and Constables Association of Texas.  See In re Murray, 257 S.W.3d 861 (Tex.
App.—Waco 2008, order) (per curiam).  We received an amicus brief from the
Commission.

 





[3]               For purposes of analyzing its
jurisdiction vis-a-vis the courts, we consider the Commission’s powers in the
same way that we would analyze the powers of an agency of the Executive Branch
of state government.  





[4]               Article V section 24 of the Texas
Constitution is one of the “constitutional directives” from which Subchapter B
of Chapter 87, which governs civil removal proceedings, is derived.  In re Bazan, 251 S.W.3d 39, 44 (Tex. 2008) (orig. proceeding).

   





[5]               Under section 87.018(e) and (f), a
county attorney from an adjoining county shall be appointed by the
commissioners where the county or district attorney is the subject of the
removal action.  See Tex. Loc.
Gov’t Code Ann. § 87.018(e), (f) (Vernon 2008).  





[6]               The Honorable Amos L. Mazzant,
Justice of the Fifth Court of Appeals, sitting by assignment of the Chief
Justice of the Supreme Court of Texas pursuant to section 74.003(a) of the
Government Code.  See Tex. Gov’t
Code Ann. § 74.003(a) (Vernon 2005).